## Loughridge, et al. v· Chenoweth's Executor.

(Decided November 25, 1913).

### Appeal from Fayette Circuit Court.

1. Contracts—Written Agreement—Prior Parol Negotiations Merged in—Parol Evidence.—When the parties have deliberately put their agreement in writing, all prior parol negotiations are merged in the writing and in the absence of fraud or mistake parol proof is not admissible to vary the writing. The rule applies although

the writing is only signed by one of the parties but is accepted and acted upon by the other.

2. Contracts—Assignment—Parol Evidence.—An endorsement made by the plaintiff on the margin of the order book assigning certain parts of a judgment and retaining in full effect the remainder, cannot be varied by parol evidence in the absence of fraud or mistake on the ground that the real contract between the parties was not set out in the endorsement.

GEO. C. WEBB for appellants.

ALLEN & DUNCAN for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Affirming.

This suit was brought by W. J. Loughridge and J. D. Walker against Mrs. Scotia I. Chenoweth's Executor to recover $1,711.93, with interest from October 14, 1903. During the pendency of the action, Loughridge made an assignment for the benefit of his creditors to Joseph S. Botts, and he was joined as a party plaintiff. The facts of the case are briefly these: In January, 1900, W. J. Loughridge and J. D. Walker owned substantially all the capital stock in the Bluegrass Tobacco Company, a corporation doing business at Lexington, Kentucky. On January 10, 1900, the Tobacco company with Walker as surety, executed to Mrs. Chenoweth a note for $10,000, with interest from date payable in one year, and secured by a mortgage on the real estate of the Tobacco Company in Lexington; also on Walker's residence in Lexington and two houses and lots he owned in Brooksville, Kentucky. The note not being paid, Mrs. Chenoweth on May 13, 1902, brought a suit in the Fayette Circuit Court to recover on the note and to enforce the mortgage lien. On July 7, 1902, she obtained a judgment against the company and Walker for $10,000 subject to credits amounting to $1,200; also a judgment for a sale of so much of the mortgaged property as was necessary to pay the debt. After the judgment was entered Walker, who was an acquaintance of Mrs. Chenoweth, urged her not to enforce the judgment by a sale of the property upon the ground that if this was done, Loughridge would buy it in and he would be closed out, thus losing all he had. A number of interviews followed between Walker, Loughridge, Mrs. Chenoweth and George S. Shanklin, her attorney. Finally an agreement was reached by which Walker was to pay $1,500 on the judgment, Loughridge $7,414.54; the mortgage on the Brooksville property was

to be released by Mrs. Chenoweth, and she was to assign to Loughridge $7,414.54 of the judgment, together with the lien on the property of the Tobacco Company which was situated on Vine Street in Lexington. After the arrangement had been made, Loughridge made an arrangement by which the Southern Mutual Investment Company was to furnish the money for him which he was to pay, and on September 6, 1902, Mrs. Chenoweth, her attorney and A. S. Bowman, Secretary of the Investment Company met at the clerk's office and the following endorsement was written upon the margin of the judgment and signed by Mrs. Chenoweth:

"In consideration of $1,500 paid by J. D. Walker, the judgment is satisfied to that amount, and the lien and judgment as to the Bracken County property is also satisfied and released.

"In consideration of $7,414.54, paid by W. J. Loughridge, the within judgment to that amount and at the request of the defendants is hereby assigned to the Southern Mutual Investment Company together with the lien hereby adjudged on the Vine Street property and the machinery. The balance of said judgment, amounting to $1,500 as of September 5, 1902, is to remain in full force in plaintiff, together with the lien herein adjudged against the Merino and Maxwell Street property, to secure the payment of said $1,500, interest and cost, this 6th of September, 1902.

"(Signed)   Sciota I. Chenoweth.
"Attest: J. C. Rogers, C. F. C. C.
"By R. G. Colbert, D. C."

Previous to this meeting Loughridge had made an arrangement with Horace Bowman of Danville, who was a nephew of A. S. Bowman, in which he was to sell Horace Bowman one-half of the stock in the Tobacco Company. Shortly thereafter this sale was made, and Bowman paid to Loughridge $13,000 for a half interest in the stock of the company. Out of this $13,000 Loughridge paid to the Southern Mutual Investment Company the $7,414.54, which it had paid for him, and thereupon this entry was made on the margin of the judgment:

"The interest of the Southern Mutual Investment Company in this judgment has been fully satisfied, and is hereby released. October 2, 1902.

"Southern Mutual Investment Company,
"By A. S. Bowman, Secretary.
"Attest: J. C. Rogers, C. F. C. C.
"By J. H. Carter, Jr., D. C."

After all this had been done it turned out that the residence of Walker on Merino and Maxwell Street which was mortgaged to Mrs. Chenoweth, and was suposed to be sufficient to secure the remaining $1,500 of her judgment was covered by a prior lien amounting to more than the value of the property. Mrs. Chenoweth thereupon on March 7, 1903, took out an execution upon her judgment and had the execution levied upon certain personal property of the Bluegrass Tobacco Company to make the balance of her debt amounting to $1,500 and interest. The sheriff advertised the property for sale, and on May 9, 1903, the Bluegrass Tobacco Company, W. J. Loughridge, J. D. Walker, and Horace Bowman instituted an action in the Fayette Circuit Court against Mrs. Chenoweth and the sheriff, seeking an injunction restraining further proceedings under the execution, alleging in substance that Mrs. Chenoweth had agreed with Loughridge and Walker in consideration of the payment to her of the remainder of the judgment, that she would look to Walker and his property for this $1,500 and interest; that Bowman had bought his stock upon the faith of this agreement, and that Loughridge had furnished the money upon the faith of it. Upon a hearing of the matter, the chancellor declined to grant a temporary injunction, and no further steps were taken in that action. The sheriff went on and sold the property which he had levied on, one Jones bought the property at the sheriff's sale and Loughridge went on the sale bond as his surety. The property was never moved from the warehouse of the Tobacco Company and at the maturity of the sale bond Loughridge paid it off, amounting to $1,711.93. This all occurred in the year 1903. The equity action remained on the docket for a year or so and was finally dismissed without prejudice. Mrs. Chenoweth died in the year 1906, and about eighteen months after her death, this action was brought. The circuit court on final hearing dismissed the petition; the plaintiffs appeal.

There is neither allegation nor proof of mistake or fraud in the written contract evidenced by the endorsement signed by Mrs. Chenoweth on the margin of the order book. It is urged that only she signed this writing, but it is none the less a written contract; for it is only paper by which she released any of her rights. Though none of the other parties signed the writing, they accepted it, and have acted upon it. They paid her $8,954.14 under

it. A party is bound by a written contract which he accepts no less than one which he signs; thus a deed signed only by the grantor, or a promissory note signed only by the maker which have been accepted by the grantee or payee cannot be varied by parol proof, without an allegation of fraud or mistake.

By the writing in consideration of $1,500, the judgment is satisfied to that amount and the lien as to the Bracken County property is released. In consideration of $7,414.54 paid by W. J. Loughridge, the judgment to that amount at the request of the defendants is assigned to the Southern Mutual Investment Company, together with the lien on the property of the Company on Vine Street; and it is then expressly provided "the balance of said judgment amounting to $1,500 as of September 5, 1902, is to remain in full force in plaintiff together with the lien herein adjudged against the Merino and Maxwell Street property to secure the payment of said $1,500, interest and cost." This language is capable of but one construction, to the extent of $1,500 as of date September 5, 1902, the judgment remains in full force in plaintiff together with the lien upon the Merino and Maxwell Street property. There was a personal judgment against both the defendants for this $1,500, and this personal judgment against both, is to remain in force; for the judgment would not remain in full force if one of them was released. It was manifestly not the purpose simply to retain the lien on the Maxwell Street property; for the judgment is to remain in full force in plaintiff together with a lien on this property.

It is earnestly insisted that the parol proof now offered shows that Mrs. Chenoweth agreed to release the Tobacco Company and to look alone to Walker and his property for this $1,500; but in the absence of fraud or mistake, the parol evidence cannot be heard to vary the written contract. The parties were negotiating for a number of weeks before the contract was concluded, and when they reached an agreement and put that agreement in writing, all their previous oral negotiations were merged in the writing. In Worland v. Secrest, 106 Ky., 711, we said:

"It is a well settled rule that where parties have deliberately put their contract in writing, it is conclusively presumed that their whole engagement was reduced to writing, unless from the form of the instrument this does not appear to have been the intention of the parties.

Parol evidence of previous or contemporaneous negotiation will not be admitted to vary the terms of the written agreement, in the absence of fraud or mistake, for the previous, verbal negotiations are merged in the writing.''

This rule must be applied here. The parties deliberately put their contract in writing, and although the contract was only signed by Mrs. Chenoweth, it was accepted and acted upon by the others; and if such written contracts could, after the lapse of many years and after the death of one of the parties, be varied by parol evidence, on such facts as we have here, there would be little security in business transactions, which have been put in writing.

Judgment affirmed.